UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOHN M ROLLERI and RYAN C. SHEPPARD, as Trustees,<br>    *Plaintiffs*,<br><br>v.<br><br>MICHAEL J. KNIGHT and DARLENE M. KNIGHT.,<br>    *Defendants*. | 3:22-CV-1269 (OAW) |

## OMNIBUS ORDER

**THIS ACTION** is before the court upon Plaintiffs' Motion to Dismiss, ECF No. 119, and Defendants' Motion for Order and Immediate Hearing ("Motion for Order"), ECF No. 148. The court has reviewed both motions, all responses and replies thereto, and all relevant exhibits. *See* ECF Nos. 125, 126, 161, 162, and 163. For the reasons discussed herein, the Motion to Dismiss is **GRANTED,** and the Motion for Order is **DENIED.**

### I.  BACKGROUND

The court previously has recounted the factual background of this case in detail, *see* ECF No. 73, and so will provide only a brief summary here. John Rolleri, Ryan Sheppard, and Michael Knight were all partners at the same accounting firm: Knight Rolleri Sheppard CPAs, LLP ("Firm").[1] Darlene Knight (Mr. Knight's wife) was an employee of the Firm (though she retired before the events that gave rise to this action), and all four parties were trustees and fiduciaries of the firm's retirement plan ("Plan").

---

[1] Plaintiffs purport to have changed the name of the firm to Rolleri & Sheppard CPAs, LLP, but Defendants contend they did not have the authority to change the name. The court makes no conclusions on that issue herein, but will simply refer to the entity, by any name, as the "Firm."

1

Plaintiffs assert that when Mr. Knight retired, he agreed to withdraw from the Plan the maximum distribution allowable by law, but unbeknownst to the remaining partners, Mr. Knight wrongfully transferred an additional $1.4 million from the Plan to personal retirement accounts owned by him and his wife.

Plaintiffs filed suit against both Mr. and Mrs. Knight, asserting various state and federal claims. Relevant here, Plaintiffs moved for a prejudgment remedy when they filed their first complaint, which motion the court denied. Since then, Plaintiffs have hired new representation and have amended their complaint. The operative complaint asserts two claims under the Employment Retirement Insurance Security Act ("ERISA"). Defendants' answer contained seven counterclaims, brought by Mr. Knight alone, against Plaintiffs. It is this denial of a prejudgment remedy and these counterclaims that are at issue now.

## II.  **LEGAL STANDARD**

It is axiomatic that federal courts have limited jurisdiction, and that an action must be dismissed where such jurisdiction is lacking. *See Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d. Cir. 2011). "[T]he plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Luckett v. Bure*, 290 F.3d 493, 497 (2d Cir. 2002).

## III.  **DISCUSSION**

Plaintiffs assert that Mr. Knight's seven counterclaims must be dismissed because (1) they all run afoul of the opposing party requirement, and (2) subject matter jurisdiction is lacking with respect to five of the seven. Defendants oppose Plaintiffs' motion, and

additionally they have filed their own, unrelated motion asserting that Plaintiffs are attempting to circumvent the court's denial of a prejudgment remedy. The court begins with the motion to dismiss.

### A. <u>Motion to Dismiss</u>

As an initial matter, the court finds that two of Mr. Knight's counterclaims are not cognizable on their face and must be dismissed for that reason. The first counterclaim asserts a claim of unclean hands, but the doctrine of unclean hands is an affirmative defense, not an independent cause of action. *Edwards v. McMillen Cap., LLC*, No. CV155008533S, 2016 WL 7196319, at *4 (Conn. Super. Ct. Nov. 4, 2016) ("There is no authority that unclean hands constitutes a cause of action . . . ."). And even if it were an independent cause of action, Defendants separately have sought relief in other counterclaims for all the conduct underpinning the allegation of unclean hands. Thus, the first counterclaim also is duplicative. And finally, the doctrine of unclean hands is a bar to equitable relief, but Plaintiffs do not seek equitable relief in the amended complaint, so the doctrine is inapplicable in any case. *Thompson v. Orcutt*, 257 Conn. 301, 310 (2001) ("The doctrine of unclean hands expresses the principle that where a plaintiff seeks equitable relief, he must show that his conduct has been fair, equitable and honest as to the particular controversy in issue . . . .") (quoting *Bauer v. Waste Management of Connecticut, Inc.,* 239 Conn. 515, 525 (1996)) (alteration in original). For all these reasons, the first counterclaim must be dismissed.

The fourth counterclaim also must be dismissed. Therein, Mr. Knight alleges that Plaintiffs have operated the Firm under a false name in contravention of state and federal statutes. But the federal statute so cited criminalizes mail fraud, and it provides no private

cause of action.  *Rizvi v. Urstadt Biddle Properties Inc.,* 791 F. App'x 282, 283 (2d Cir. 2020).  And while the state statute so cited (Connecticut General Statute § 35-1) does provide for an unfair trade practices claim based upon use of a fictitious business name, Mr. Knight has stated an unfair trade practices claim in another counterclaim, specifically for the use of a fictitious name.  Accordingly, this claim is duplicative of another state law claim, and it is not cognizable under federal law.  For these reasons, the court dismisses the second counterclaim as well.

### 1. *Opposing Party Requirement*

Plaintiffs assert all remaining counterclaims also must be dismissed because they violate the opposing party rule.  This "rule" derives from Federal Rule of Civil Procedure 18, which allows a party to join "as many claims as it has against *an opposing party.*"  Fed. R. Civ. P. 18(a) (emphasis added).  Courts have interpreted this language to mean that where a party participates in litigation in one capacity, they are a party in that capacity only.  *See Banco Nacional de Cuba v. Chase Manhattan Bank*, 658 F.2d 875, 885 (2d Cir. 1981) ("The generally prevailing, although not uniform, view is that the 'opposing party' requirement means that when a plaintiff has brought suit in one capacity, the defendant may not counterclaim against him in another capacity.").  Under Plaintiffs' strict interpretation of this rule, because they have only asserted claims *as trustees of the Plan,* Defendants may countersue them only in that capacity.  The counterclaims, though, allege various forms of misconduct in the performance of Plaintiffs' duties as partners of the Firm, and thus can be asserted against Mr. Rolleri and Mr. Sheppard only in their *individual capacities.*

Mr. Knight responds by quoting the court's earlier observation that all the parties to this action are simultaneously employers, trustees, fiduciaries, and participants in the Plan.  He argues that it is therefore disingenuous for Plaintiffs to pretend to bring suit only on behalf of the Plan, particularly where Mr. Rolleri admitted to the court that he personally stands to benefit most from this lawsuit.

The United States Court of Appeals for the Second Circuit has "recognize[d] that it will not always be wise to apply the 'opposing party' rule mechanically . . . ." *Id.* at 886. "In some instances the courts have looked beyond the capacities of the parties in order to determine who were the real parties in interest, and have allowed a counterclaim where closely similar interests were involved . . . ." *Id.*

The court is persuaded that Mr. Rolleri and Mr. Sheppard, as individuals, may be true parties in interest to this action, and they at least have interests as individuals that are so similar to their interests as trustees that Mr. Knight may be permitted to sue them in their individual capacities.  Plaintiffs' first argument therefore is rejected.

### 2. *Subject Matter Jurisdiction*

The court finds that Mr. Knight has failed to show that the counterclaims arise from a common nucleus of operative fact such that it would be appropriate to exercise supplemental jurisdiction over them.  Exercise of supplemental jurisdiction is permitted, and sometimes even mandated, by federal statute, which states that, with few exceptions, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution . . . ."  18 U.S.C. § 1367(a).

5

Here, it is not clear that Plaintiffs' federal claims and Mr. Knight's counterclaims arise from a common nucleus of operative facts. Plaintiffs' claims deal with certain specific transfers of funds from the Plan into Defendants' personal retirement accounts. The counterclaims have nothing to do with these transfers or the Plan. Rather, the counterclaims accuse Mr. Rolleri and Mr. Sheppard of some financial malfeasance after Mr. Knight already had retired (and for the most part, after the date Plaintiffs contend they expelled Mr. Knight from the partnership). But these appear to be two separate and distinct courses of allegedly unlawful conduct. The prosecution of one may be done completely divorced from the prosecution of the other, and each would involve a separate body of evidence and a separate set of laws. Thus, exercising jurisdiction over the counterclaims in this action would not yield the efficiencies that supplemental jurisdiction is supposed to afford the parties and the court. Thus, the court concludes that there is no supplemental jurisdiction over Defendants' counterclaims.

Accordingly, the Motion to Dismiss is granted, and all seven of Mr. Knight's counterclaims are dismissed. The first and fourth counterclaims, discussed supra, are dismissed with prejudice, but the court will allow Defendants to amend the other counterclaims to allege facts showing that supplemental jurisdiction is appropriate.

### B. Motion for Order

Defendants' motion arises from a letter in which Plaintiffs' counsel informs Defendants' financial institution ("Vanderbilt") of this ERISA action and invokes a provision of the act, 29 U.S.C. § 1056(h)(4)(G), which requires Vanderbilt to retain the alleged overpayment. As a result of this letter, Vanderbilt has frozen all the funds in all of Defendants' accounts, even those that did not receive the allegedly unlawful transfers.

Defendants argue that this amounts to a violation of the court's denial of any prejudgment remedy, and they ask the court to order Plaintiffs to cease their campaign to restrict Defendants' usage of the funds.

The court disagrees that there has been any violation of court orders by this course of action. The remedy Plaintiffs seek from Vanderbilt is separate and distinct from the prejudgment remedy the court denied them. Plaintiffs are acting under the provisions of ERISA, not any state statute. Thus, the court rejects Defendants' argument.

However, the court questions whether total restraint of Defendants' funds is permitted by the provision at issue. Section 1056(h)(4)(G) allows an ERISA plan that *inadvertently* overpays a benefit to seek recoupment of such *overpayment*, subject to certain restrictions. It is not clear whether this subparagraph is applicable to the circumstances presented here, where the transfer of funds from the Plan was intentional. But the court can find no authority providing for judicial review of any action under this subparagraph. Rather, if the provision applies, it states that the appropriate means of challenging any restraint of funds is through the appellate process laid out in the Plan itself. The court may thereafter review the Plan's final determination as to recoupment.

The court also recognizes, though, that any appeal to the Plan would present the absurd situation of Defendants seeking relief from Plaintiffs, who were the same parties which sought the restraint of funds in the first instance.

Accordingly, Defendants' motion is granted in part. Because the court does not appear to have authority to order any relief in connection with the letter to Vanderbilt (at least until Defendants have exhausted their administrative remedies with the Plan), the court cannot order Plaintiffs to forego the remedies afforded them under ERISA. But

7

because it also appears that there is a strong likelihood of this issue returning to the court's attention, the court hereby instructs the parties to meet and confer with the aim of negotiating a stipulation which will safeguard any funds to which Plaintiffs assert a right, but only those funds.  Any such stipulation shall be published to Vanderbilt with due haste. If the parties cannot come to an agreement on that point, Defendants' only recourse shall be through the Plan's appellate process, and thence to judicial review.

## IV. CONCLUSION

Accordingly, it is thereupon **ORDERED AND ADJUDGED** as follows:

1. Plaintiffs' Motion to Dismiss, ECF No. 119, is **GRANTED.**
    a. All seven of Defendants' counterclaims hereby are dismissed.
    b. Defendants may submit amended counterclaims consistent with this ruling on or before **October 3, 2025**.
2. The Motion for Order and Immediate Hearing, ECF No. 148, is **GRANTED in part.**
    a. The parties shall meet and confer at the earliest time mutually convenient, but in any case on or before <b>September 19, 2025.</b>
    b. The parties shall a status report on or before <b>September 26, 2025,</b> indicating whether they were able to negotiate a satisfactory stipulation.

**IT IS SO ORDERED** at Hartford, Connecticut, this 18th day of August, 2025.

/s/
OMAR A. WILLIAMS
UNITED STATES DISTRICT JUDGE